UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PEGGY O'NEILL and KELLY O'NEILL :     Plaintiffs, | CIVIL ACTION NO. |
| v. : | |
| COUNTRY MOTORS II, INC. d/b/a BOB'S BUICK GMC OF MILFORD and EXETER FINANCE CORP.     Defendants | JULY 13, 2015 |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by two consumers regarding the purchase and sale of a motor vehicle pursuant to a retail installment sales contract. Plaintiffs bring this action to recover actual damages, statutory damages, punitive damages, reasonable attorney's fees and costs from Defendants Country Motors II, Inc. d/b/a Bob's Buick GMC of Milford ("Country Motors") and Exeter Finance Corp. ("Exeter"). Plaintiffs also seek revocation of acceptance of the Vehicle or, alternatively, a rescission of the contract, a return of amounts paid and an order that no deficiency is owing by them to Exeter. The Plaintiffs claim that Country Motors has violated the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Credit Repair Organization Act 15 U.S.C. § 1679 *et seq.* ("CROA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"). Plaintiffs also claim that Exeter violated the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-770 *et seq.* ("RISFA") and the Connecticut Creditor Collection Practices Act, Conn. Gen. Stat. §

36a-645 *et seq.* ("CCPA") by failing to provide Plaintiffs with proper notice following the repossession and resale of the Vehicle.

## II. PARTIES

2.      Plaintiff Peggy O'Neill ("Peggy") is a consumer and natural person residing in Stratford, Connecticut.

3.      Plaintiff Kelly O'Neill ("Kelly") is a consumer and natural person residing in Stratford, Connecticut, and he is the son of Peggy O'Neill.

4.      Country Motors is a Connecticut corporation that operates an automobile dealership in Milford, Connecticut.

5.      Exeter is a Texas corporation with principal offices in Irving, Texas.

## III. JURISDICTION

6.      Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7.      This court has jurisdiction over Country Motors because it is a Connecticut corporation that regularly conducts business in this state.

8.      The Court has jurisdiction over Exeter because it regularly conducts business in Connecticut.

9.      Venue in this court is proper, because the Plaintiffs reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. **FACTUAL ALLEGATIONS**

10. Prior to July 24, 2014, Peggy received telephone calls from a salesman who identified himself as Walter Pettway ("Walter") from Country Motors. Walter told Peggy he had a lot of good deals on automobiles and he convinced her to go to the dealership to look at cars.

11. On July 24, 2014, Peggy went to Country Motors to meet with Walter and look at available cars for sale. Kelly arrived at Country Motors later in the day.

12. Walter showed Peggy a used 2012 Chrysler 200 LX (the "Vehicle").

13. Peggy and Kelly were kept at the dealership for approximately six hours, and Walter told them that the sale price was good for that day only. This was a false and deceptive statement, because Country Motors and other dealerships routinely sell comparable vehicles for significantly less than the price that the Vehicle was sold to Plaintiffs.

14. Country Motors prepared and presented Plaintiffs with a retail installment sales contract (the "Contract") for the purchase of the Vehicle.

15. The Contract indicated a cash price of $17,200.

16. The Vehicle had a NADA Retail value of approximately $14,575.

17. Plaintiffs traded in a 2000 Dodge Intrepid towards the purchase of the Vehicle and Country Motors applied a trade-in allowance of $3,500.

18. The trade-in allowance was significantly greater than the true value of the Dodge Intrepid, which was approximately $500, and the purchase price of the Vehicle was inflated in part due to this overallowance.

3

19. The retail installment contract contained an itemization of the amount financed that did not accurately reflect the true cost of the Vehicle or the true allowance for the Dodge Intrepid.

20. Additionally, the retail installment contract stated that Plaintiffs made a cash downpayment of $500, even though Plaintiffs had paid only $100 at the time they signed the Contract.

21. Country Motors advanced $400 to Plaintiffs to enable them to get a check in that amount to demonstrate payment in full of the down payment to Exeter.

22. The pick-up payments for the down payment were incorrectly included as part of the down payment and were not included in the schedule of payments.

23. At the time of purchase, Peggy had income of $1,571 per month in pension and social security benefits.

24. At the time of purchase, Kelly had income of less than $1,200 per month.

25. At the time of purchase, Plaintiffs had housing rental expenses of $1,600 per month.

26. On information and belief, someone on behalf of Country Motors submitted a credit application to Exeter that falsely stated that Peggy was receiving $2,069 per month from pension and social security benefits, that Kelly was earning $1,833 per month in income and that their monthly housing rental expense was only $250.

27. Country Motors provided Exeter with a false list of references containing names of individuals that Plaintiffs do not know and that Country Motors forged Plaintiffs' signatures to that reference list.

4

28. Country Motors obtained approval from Exeter to accept assignment of the Contract.

29. This approval was obtained based upon fraudulent and false credit information that was submitted to Exeter by Country Motors, the false references, and Country Motor's false statements regarding the value of the Vehicle, the value of the trade-in, and the amount being paid as a down payment.

30. Plaintiffs believe, and on that basis allege, that Exeter would not have approved the transaction if it knew of Plaintiffs' actual income and expenses, and on that basis, Plaintiffs allege that Country Motors submitted false credit information to Exeter.

31. As a consequence of Country Motors credit application fraud, they were approved for a transaction that they could not afford.

32. After the sale, Exeter contacted Peggy to verify that she had made a $500 payment, and Peggy acknowledged to Exeter that she had only paid $100 of the down payment at the time she signed the Contract.

33. Country Motors advanced $400 cash to Plaintiffs, which they in turn repaid to Country Motors, so that Country Motors could falsely document to Exeter that the entire $500 deposit had been paid.

34. Country Motors did not assign the title or register the Vehicle to Plaintiffs at the time of the retail installment contract but instead withheld registration and assignment of title until it received confirmation that Exeter was going to purchase the retail installment sales contract, which was not until several weeks after the July 24, 2014 date of the Contract.

35. Consequently, the credit under the Contract was not extended to Plaintiffs until after the date of contract, resulting in a significant understatement of the Annual Percentage Rate.

36. Plaintiffs were unable to make the monthly payments for the Vehicle, which was subsequently repossessed by Exeter in early November 2014.

37. Plaintiffs did not receive a notice of intended disposition of the Vehicle from Exeter and, on that basis, allege that Exeter did not provide them with a notice of the intended disposition to the Plaintiffs as required by Conn. Gen. Stat. § 36a-785(d) and by Article 9 of the Uniform Commercial Code.

38. Following the disposition of the Vehicle, Exeter sent Plaintiffs a written notice dated January 16, 2015 captioned "Explanation of Calculation of Deficiency" in which it failed to state the gross proceeds of the sale, failed to credit the account for the fair market value of the vehicle, and improperly asserted entitlement to the costs of resale.

## V.   CAUSES OF ACTION
### A.  TRUTH IN LENDING ACT

39. Plaintiffs incorporate paragraphs 1 through 38.

40. Country Motors violated TILA by failing to include the deferred $400 within the schedule of payments and by falsely including it as part of the down payment.

41. Country Motors further violated TILA by its overstatement of the Annual Percentage Rate due to its failure to assign title of the Vehicle to Plaintiffs and its failure to register the Vehicle to them at the time of sale.

6

42. Country Motors further violated TILA by not accurately itemizing the amount financed in that it added the amount over-allowed on Plaintiffs' trade-in vehicle to the purchase price of the Vehicle.

43. Plaintiffs have suffered damages, because they did not realize that the purchase price of the Vehicle was increased on account of the over-allowance on the trade-in.

44. Country Motors is liable to Plaintiffs for their actual damages plus a reasonable attorney's fee.

### .B.  CREDIT REPAIR ORGANIZATION ACT

45. Plaintiffs incorporate paragraphs 1 through 38.

46. Country Motors violated 15 U.S.C. § 1579b(a)(1), which prohibits any person from making any statement that is untrue or misleading with respect to any consumer's credit worthiness, credit standing, or credit capacity to any person to whom the consumer has applied or is applying for an extension of credit.

47. Country Motors is liable to Plaintiffs for damages, punitive damages, and attorney's fees pursuant to 15 U.S.C. § 1579g.

### C.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

48. Plaintiffs incorporate paragraphs 1 through 38.

49. Country Motors' failure to assign title and register the Vehicle to Plaintiffs at the time of sale violated Conn. Gen. Stat. § 14-62, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23).

50. Country Motors' conduct, as aforedescribed, was unfair and deceptive and in violation of CUTPA, in that it has engaged in a predatory sale of a vehicle to

consumers who could not afford payment, and it has facilitated this transaction through credit application fraud and forgery.

51. Plaintiffs have suffered an ascertainable loss of money or property in that they have lost their $500 downpayment, they have lost their trade-in vehicle, and their credit has suffered significant harm.

52. Plaintiffs are entitled to actual and punitive damages for Country Motors' CUTPA violations.

### D.  REVOCATION OF ACCEPTANCE/RESCISSION OF THE CONTRACT

53. Plaintiffs incorporate paragraphs 1 through 38.

54. Plaintiffs voluntarily surrendered the Vehicle to Exeter.

55. Defendants have been restored as nearly as possible to their pre-contractual position.

56. Country Motors' violated RISFA by its violations of TILA, as aforedescribed, entitling Plaintiffs to a rescission of the Contract and to a return of the amounts paid for the Vehicle, and to an order that no deficiency is owing.

57. Alternatively, Plaintiffs are entitled to revoke acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-721 due to fraud and material misrepresentation by Country Motors.

### E.  LIABILTY OF EXETER

58. Plaintiffs incorporate paragraphs 1 through 57.

59. Exeter, as the assignee of the retail installment sales contract, is subject to Plaintiffs' claims against Country Motors (excluding the claim under TILA).

60. Exeter is also subject to defenses that could be raised against Country Motors, and Plaintiffs are entitled to an order that they have no obligation under the Contract.

### F. RISFA CLAIM AGAINST EXETER

61. Plaintiffs incorporate paragraphs 1-38.

62. Due to Exeter's failure to comply with Conn. Gen. Stat. § 36a-785, Plaintiff is entitled to 25% of the amount paid under the Contract, or $1,000, plus an order that there is no deficiency owed by them.

### G. CCPA CLAIM AGAINST EXETER

63. Plaintiffs incorporate paragraphs 1-38.

64. Exeter's January 16, 2015 notice contained false statements regarding the amount of any deficiency that could be claimed against Plaintiffs.

65. Exeter is liable to Plaintiffs pursuant to Conn. Gen. Stat. § 36a-648.

### H. UCC CLAIM AGAINST EXETER

66. Plaintiffs incorporate paragraphs 1-38.

67. Due to Exeter's failure to comply with the post-repossession notice of disposition of collateral requirements under Article 9 of the UCC, Exeter is liable to Plaintiff for the finance charge of $9,245.30 plus 10% of the $15,098.62 amount financed, for a total of $10,755.16.

**Wherefore, Plaintiffs claim** statutory damages, actual damages, punitive damages, and a reasonable attorney's fee; revocation of acceptance of the Vehicle or, alternatively, an order rescinding the contract, a return of the amounts paid thereunder; and an order that no deficiency is owing.

      PLAINTIFFS, PEGGY O'NEILL and
      KELLY O'NEILL


      By: /s/ *Daniel S. Blinn*
      Daniel S. Blinn (ct02188)
      Consumer Law Group, LLC
      35 Cold Spring Rd. Suite 512
      Rocky Hill, CT  06067
      Tel. (860) 571-0408
      Fax. (860) 571-7457
      dblinn@consumerlawgroup.com